ACCEPTED
01-15-00192-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/6/2015 6:33:16 PM
CHRISTOPHER PRINE
CLERK

Case No. 01-15-00192-CV

_____

IN THE FIRST COURT OF APPEALS
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

8/6/2015 6:33:16 PM

CHRISTOPHER A. PRINE
Clerk

_____

DANIEL MANDARINO, CARRIE MANDARINO, LAURA DOYLE, ROBERT CHURCH, BRETT BEALS and LINDA BEALS as Trustees of the Beals Family Revocable Trust, ROBERT CHURCH, ROBERT A. SCHALBE, WILLIAM H. GAY, JR., ERIC JOHNSTONE, RAFAL ZIELINSKI and VALLY MESTRONI, Appellants

v.

SHERWOOD LANE INVESTMENTS, LLC, Appellee

_____

From the 164TH Judicial District Court, of Harris County, Texas
Trial Court Cause No. 2014-32347
Honorable Alexandra Smoots-Hogan, Judge Presiding

---

**APPELLANTS' BRIEF**

---

TERI A. WALTER
Texas Bar No. 20815100
GLEN NORDT
Texas Bar No. 15076600
WALTER LAW FIRM, PC
1111 North Loop West, Suite 1115
Houston, TX  77008
Phone       713 529-2020
Fax           713 529-2266
Email twalter@prevaillawyers.com
Email gnordt@prevaillawyers.com
ATTORNEY FOR APPELLANTS

**ORAL ARGUMENT REQUESTED**

Case No. 01-15-00192-CV

DANIEL MANDARINO, CARRIE MANDARINO, LAURA DOYLE, ROBERT CHURCH,
BRETT BEALS and LINDA BEALS as Trustees of the Beals Family Revocable Trust,
ROBERT CHURCH, ROBERT A. SCHALBE, WILLIAM H. GAY, JR., ERIC JOHNSTONE,
RAFAL ZIELINSKI and VALLY MESTRONI, Appellants

v.

SHERWOOD LANE INVESTMENTS, LLC, Appellee

## IDENTITY OF PARTIES AND COUNSEL

Attorneys for Appellants DANIEL MANDARINO, CARRIE MANDARINO, LAURA
DOYLE, ROBERT CHURCH, BRETT BEALS and LINDA BEALS as Trustees of the Beals
Family Revocable Trust, ROBERT CHURCH, ROBERT A. SCHALBE, WILLIAM H. GAY,
JR., ERIC JOHNSTONE, RAFAL ZIELINSKI and VALLY MESTRONI:

TERI A. WALTER
Texas Bar No. 20815100
GLEN NORDT
Texas Bar No.15076600
WALTER LAW FIRM, PC
1111 North Loop West, Suite 1115
Houston, TX  77008
Phone       713 529-2020
Fax    713 529-2266
Email twalter@prevaillawyers.com
Email gnordt@prevaillawyers.com

i

Attorneys for Appellee SHERWOOD LANE INVESTMENTS, LLC:

Douglas A. Daniels
Texas Bar No. 00793579
Andrea L. Gentle
Texas Bar No. 24074266
DANIELS & GENTLE, LLP
6363 Woodway Suite 980
Houston, TX  77057
Phone       713 979 4279
Fax     713 979 4270
Email:  douglas.daniels@danielsgentle.com
Email:  andrea.gentle@danielsgentle.com

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT ON ORAL ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF THE ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6


Issue 1:    The trial court erred in granting SHERWOOD's Motion for Summary Judgment, based on no evidence or insufficient evidence of the Note and fact issues regarding the terms of the Note. . . . . . . . . . . . . . . . 10

Issue 2:    The trial court erred in granting SHERWOOD's Motion for Summary Judgment based on fact issues regarding the principal and interest due on the Note. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Issue 3:    The trial court erred in granting SHERWOOD's Motion for Summary Judgment because there was no evidence or insufficient evidence of SHERWOOD's standing as an owner, holder, and/or holder in due course of the Note. .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Issue 4:    The trial court erred in granting SHERWOOD's Motion for Summary Judgment and denying Appellants' Motion for Summary Judgment based on the two year statute of limitations pursuant to Tex. Prop. Code § 51.003.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Issue 5:    The trial court erred in granting SHERWOOD's Motion for Summary Judgment based on fact issues of fraud, fraudulent inducement and fraud in a real estate transaction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

APPENDIX 1 - Final Judgment.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appendix 1

APPENDIX 2 - Wraparound Promissory Note. . . . . . . . . . . . . . . . . . . Appendix 2

APPENDIX 3 - Statutory Text. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appendix 3

    Tex. Prop. Code § 51.003(a) Deficiency Judgment. . . . . . . . . . Appendix 3.1

    Tex. Rev. Civ. Stat. art. 6132a-1 (RPLA) Sec. 8.01. . . . . . . . . . . Appendix 3.1

    Tex. Rev. Civ. Stat. art. 6132a-1 (RPLA) Sec. 8.04. . . . . . . . . . . Appendix 3.2

    Tex. Rev. Civ. Stat. art. 6132a-1 (RPLA) Sec. 8.05. . . . . . . . . . . Appendix 3.3

    Tex. Rev. Civ. Stat. art. 6132a-1 (RPLA) Sec. 13.06. . . . . . . . . . Appendix 3.3

APPENDIX 4 - Diagram of Transactions. . . . . . . . . . . . . . . . . . . . . . . Appendix 4

APPENDIX 5 - Index of Persons and Companies. . . . . . . . . . . . . . . . . . Appendix 5

APPENDIX 6 - Time Line of Events. . . . . . . . . . . . . . . . . . . . . . . . . . . Appendix 6

# INDEX OF AUTHORITIES

## Cases

*Baylor Univ. v. Sonnichesen*, 221 S.W.3d 632, 635 (Tex. 2007).. . . . . . . . . . . . . . . 25

*Boyd v. Diversified Financial Systems*, 1 S.W.3d 888 (Tex. App. - Dallas, 1999, no pet.) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008). . . . . . . . . . . . . . . 25

*Dutton v. Dutton*, 18 S.W.3d 849, 853 (Tex. App.-Eastland 2000, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*El T. Mexican Restaurants, Inc. v. Bacon*, 921 S.W.2d 247 Tex. App.-Houston [1st Dist.] 1995, writ denied).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*First National Acceptance Company v. Dixon*, 154 S.W.3d 218, (Tex. App. Beaumont-2004, pet. denied.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Forest Oil Corp. v. McAllen,* 268 S.W.3d 51 (Tex. 2008).. . . . . . . . . . . . . . . . . . . . 46

*Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983). . . . . . . . . . . 29

*HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 113 (Tex. App.-Houston [1st Dist.] 2005, no pet.).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In Re Hawthorne Townhomes, L.P. v. Branch*, 282 S.W.3d 131, 138 (Tex. App.-Dallas 2009, orig. proceeding). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co.,* 341 S.W.3d 323, 328-337 (Tex. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46, 47

*Lewis v. Davis*, 145 Tex. 468; 199 S.W.2d 146, 148-149 (1947). . . . . . . . . . . . . . . 24

*Mays v. Bank One, N.A.*, 150 S.W.3d 897 (Tex. App.-Dallas 2004, no pet.). . . 43, 44

*Mega Child Care, Inc. v. Tex. Dep't of Protective & Regulatory Servs.,* 29 S.W. 3d 303, 308 (Tex. App. - Houston [14th Dist] 2000, no pet.) . . . . . . . . . . . . . . . . . . . . 14

*Moayedi v. Interstate 35/Chisam Road, L.P.,* 438 S.W.3d 1 (Tex. 2014).. . . . . . . . . 39

*Monsanto Co. v. Cornerstones Mun. Util. Dist.,* 865 S.W.2d 937, 939 (Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 352 (Tex. 1990).. . . . . . . . . . . . . 42

*Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000) . . . . . . . . . . . 42

*Omaha Healthcare Ctr. v. Johnson*, 334 S.W.3d 392, 394 (Tex. 2011). . . . . . . . . . 40

*Peck v. Peck*, 172 S.W.3d 26, 31 (Tex.App.-Dallas 2005, pet. denied). . . . . . . . . . 29

*Phillips v. Phillips*,  820 S.W.2d 785, 789 (Tex. 1991). . . . . . . . . . . . . . . . . . . . . . . 24

*RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985). . . . 27, 41

*Schlumberger Technology Corp. v. Swanson,* 959 S.W.2d 171 (Tex.  1997) . . . . . 46

*Sowell v. International Interests, LP*, 416 S.W.3d 593, (Tex. App.-Houston [14th Dist] 2013, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). . .  27, 28, 41, 42

*Texas Employers' Ins. Assn. v. Taylor*, 283 S.W. 779, 780 (Tex. Com. App. 1926, judgmt. adopted). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Westerngeco, L.L.L. v. Input/Output, Inc.,* 246 S.W.3d 776, 786 (Tex. App.-Houston [14th Dist.] 2008, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 25

**Statutes**

Tex. Bus. & Com. Code § 3.114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Tex. Bus. & Com. Code § 3.203(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

Tex. Bus. & Com. Code § 3.302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Tex. Bus. Org. Code § 402.001(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Tex. Prop. Code § 51.003. . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 8, 35, 40-43

Tex. Prop. Code § 51.005. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Tex. Rev. Civ. Stat. art. 6132a-1, Revised Limited Partnership Act § 8.05. . . . 23, 28

Tex. Rev. Civ. Stat. art. 6132a-1, Revised Limited Partnership Act § 8.04. . . . 22, 28

Tex. Rev. Civ. Stat. art. 6132a-1, Revised Limited Partnership Act § 13.06. . . 26, 27

Tex. Rev. Civ. Stat. art. 6132a-1, Revised Limited Partnership Act § 8.01. . . . 20, 21

## STATEMENT OF THE CASE

This is a suit for the deficiency balance due on a promissory note after foreclosure of the real property securing the note. Plaintiff/Appellee SHERWOOD LANE INVESTMENTS, LLC, (SHERWOOD) is the assignee of the Note, on which Defendants/Appellants DANIEL MANDARINO, CARRIE MANDARINO, LAURA DOYLE, ROBERT CHURCH, BRETT BEALS and LINDA BEALS as Trustees of the Beals Family Revocable Trust, ROBERT CHURCH, ROBERT A. SCHALBE, WILLIAM H. GAY, JR., RICCARDIO D. GAY, ERIC JOHNSTONE, RAFAL ZIELINSKI and VALLY MESTRONI were makers. (CR 5).

The trial court granted summary judgment in favor of SHERWOOD on December 19, 2014 (CR 396), and Defendants/Appellants' Motion for New Trial was heard on January 30, 2015 (CR 415), but no order was signed granting or denying the motion. Therefore, the Motion for New Trial was overruled by operation of law on March 4, 2015.

## STATEMENT ON ORAL ARGUMENT

Appellants request oral argument.  This case involves complex issues of the rights of an entity to enter into new, long term contracts after it has been dissolved, its right to do business has been terminated, and its certificate of registration revoked.  In addition, this is a case of first impression regarding whether the statute of limitations, Tex. Prop. Code § 51.003, applies to the holder of a second lien, after the first lien holder forecloses on the property securing the debts.  Oral argument would significantly aid the Court in deciding this case, by allowing a more complete understanding of the facts presented, and the effect of the foreclosure of a first lien on the rights of second lien holders and debtors.

## ISSUES PRESENTED

Issue 1: The trial court erred in granting SHERWOOD's Motion for Summary Judgment, based on no evidence or insufficient evidence of the Note, and fact issues regarding the terms of the Note.

Issue 2: The trial court erred in granting SHERWOOD's Motion for Summary Judgment based on fact issues regarding the principal and interest due on the Note.

Issue 3: The trial court erred in granting SHERWOOD's Motion for Summary judgment because there was no evidence or insufficient evidence of SHERWOOD's standing as an owner, holder, and/or holder in due course of the Note.

Issue 4: The trial court erred in granting SHERWOOD's Motion for Summary Judgment and denying Appellants' Motion for Summary Judgment based on the two year statute of limitations pursuant to Tex. Prop. Code § 51.003.

Issue 5: The trial court erred in granting SHERWOOD's Motion for Summary Judgment based on fact issues of fraud, fraudulent inducement and fraud in a real estate transaction.

3

## STATEMENT OF FACTS

SHERWOOD seeks to enforce a "Wraparound Promissory Note" (Wraparound Note) dated October 16, 2006 between Sherwood Pines, Ltd. as Payee and Defendants/Appellants as Makers (CR 8, 66). The Wraparound Note was subordinate to the "Original Fixed Rate Note" (First Lien Note) between Morgan Guaranty Trust Company as Lender and Sherwood Pines, Ltd. as Maker, dated June 27, 2001 (CR 66). Both the First Lien Note and the Wraparound Note were secured by liens upon the same real property - Sherwood Pines Apartments, 4211 Sherwood Lane, Houston, Texas. (CR 173, 197).

Sherwood Pines, Ltd. was dissolved on November 4, 1999, when one of its general partners resigned (CR 220). Thereafter its right to do business was forfeited on October 5, 2005 (CR 223), and its certificate of registration was cancelled on February 6, 2006 (CR 224).

The Wraparound Note was dated October 16, 2006 (Wraparound Note, CR 66). Sherwood Pines, Ltd. assigned a portion of its interest in the Wraparound Note (all except the right to receive a 2% penalty payment) to Lee Wallis, Inc., on or about March 10, 2008 (CR 229).

4

The holder of the First Lien Note foreclosed on the real property securing the Note on April 6, 2010. (CR 209).

Lee Wallis, Inc. assigned its interest in the Wraparound Note to SHERWOOD on May 19, 2014. (CR 57). SHERWOOD filed suit to collect the unpaid deficiency balance of the Wraparound Note on June 5, 2014. (CR 5).

## SUMMARY OF THE ARGUMENT

The Wraparound Note was not properly in evidence, and there was a fact issue as to the terms of the Wraparound Note. SHERWOOD did not prove up the Wraparound Note as a business record of anyone, and the Note presented to the court was incomplete on its face since "Exhibit A" to the Wraparound Note was missing. Appellants objected to the Wraparound Note as hearsay and incomplete, as well as to the competence of the witnesses purportedly authenticating the Wraparound Note. Since the Wraparound Note was not properly in evidence, and there were fact issues as to the terms of the Note, SHERWOOD's summary judgment should not have been granted.

SHERWOOD presented the court with two conflicting affidavits as to the amount of principal and due on the Wraparound Note. These conflicting affidavits created a fact issue which precludes summary judgment.

SHERWOOD failed to present any competent summary judgment evidence of its standing as an owner, holder, and/or holder in due course of the Wraparound Note. The original payee of the Wraparound Note was Sherwood Pines, Ltd., a purported Texas limited partnership which had been dissolved on November 4, 1999, upon the withdrawal of a general partner (CR 220). Thereafter, its right to do

6

business was forfeited on October 5, 2005 (CR 223), and its certificate of registration was cancelled on February 6, 2006 (CR 224). All of these events pre-date the October 16, 2006 Wraparound Note (CR 66).

It is well settled Texas law that if one of the parties to a contract does not exist, no contract can be formed as a matter of law. For the same reason, Sherwood Pines, Ltd.'s subsequent assignment of the Wraparound Note to Lee Wallis, Inc. was also invalid, and therefore Lee Wallis, Inc. received no rights which it could assign to SHERWOOD. Due to Sherwood Pines, Ltd.'s lack of capacity to enter into the Wraparound Note, and the failure to transfer the entire instrument, SHERWOOD does not have standing to enforce the Wraparound Note.

Sherwood Pines, Ltd. assigned a portion of its interest in the Wraparound Note (all except the right to receive a 2% penalty payment) to Lee Wallis, Inc., on or about March 10, 2008 (CR 229). In addition, each of the purported assignments of the Note omitted a part of the instrument - Exhibit A - and the missing portion has not been explained. Where there is an attempted indorsement of less than the entire instrument, the transferee obtains no rights to enforce the instrument.

SHERWOOD, as the purported assignee of the Wraparound Note, does not qualify as a holder in due course, because SHERWOOD had actual or constructive

7

notice that the Wraparound Note was in default when at the time it was assigned to SHERWOOD, and because of the attempted partial assignment of the Note. Therefore, SHERWOOD is subject to the same defenses that Appellants could have asserted against the original lender, including the defenses of fraud, fraudulent inducement, and fraud in a real estate transaction.

The Wraparound Note was secured by a second lien on the Sherwood Pines Apartments. The first lien holder foreclosed on the property on April 6, 2010, and SHERWOOD's suit was filed on June 5, 2014, more than four years after the foreclosure. Tex. Prop. Code § 51.003 provides that if real property is sold at a foreclosure sale for "*less than the unpaid balance of the indebtedness secured by the real property, resulting in a deficiency, any action brought to recover the deficiency must be brought within two years of the foreclosure sale.*" The statute does not require that the foreclosure be performed by the same lien holder who later seeks a deficiency judgment. SHERWOOD failed to bring suit to recover the deficiency balance due on the Note within the two year statute of limitations.

Appellants asserted various fraud defenses and presented summary judgment evidence that the Wraparound Note was intended to be a non-recourse note, (i.e. Appellants were not intended to have had personal liability on the Note.) In

8

addition, the "merger clause" in the Wraparound Note is insufficiently worded to preclude extrinsic evidence of fraudulent inducement and/or evidence that the Wraparound Note should have been nonrecourse. APPELLANTS raised fact issues of fraud, fraudulent inducement and fraud in a real estate transaction, precluding summary judgment.

**ARGUMENT**

Issue 1: The trial court erred in granting SHERWOOD's Motion for Summary Judgment, based on no evidence or insufficient evidence of the Note and fact issues regarding the terms of the Note.

The Wraparound Note which is the basis of SHERWOOD's claim against Appellants, (CR 66) was not properly proved up because the copy of the Note which submitted as summary judgment evidence was incomplete on its face, and there is no evidence of any exception to the hearsay rule which would make the document admissible. Appellants objected to these evidentiary defects, and sought a ruling from the court on their objections (CR 143, 398).

SHERWOOD attempted to authenticate the Wraparound Note and its indorsements and assignment by three affidavits - one by John Gilmore (Exhibit A to the Motion for Summary Judgment, CR 49), one by James Hale (Exhibit B to the Motion for Summary Judgment, CR 53), and one by Herb Richardson (Exhibit C to the Motion for Summary Judgment, CR 62). The Wraparound Note itself was attached as Exhibit C-1 to the Motion for Summary Judgment (CR 66). However, none of these witnesses were competent to authenticate the Wraparound Note or the subsequent indorsements and assignment of the Wraparound Note, and none attempted to authenticate the Note, indorsements or assignment as business records of any

10

company. Instead, the witnesses merely testified that the document was a "true and correct copy" of the Note, despite the fact that the document was incomplete on its face, since it was missing Exhibit A.

**Affidavit of John Gilmore**

At the time Sherwood Pines, Ltd was formed, John Gilmore was one of its general partners (CR 218), but he resigned as a general partner on November 4, 1999 (CR 220), which dissolved the partnership by operation of law. Sherwood Pines, Ltd., had its right to do business in Texas terminated by the Secretary of State on October 5, 2005. Sherwood Pines, Ltd's right to do business was never reinstated, and its certificate of registration was cancelled on February 6, 2006 (CR 224), approximately six months prior to the date on the Wraparound Note. Nevertheless, John Gilmore's affidavit attempts to authenticate both the Wraparound Note and the indorsement of the Wraparound Note to Lee Wallis, Inc. on March 10, 2008, long after Sherwood Pines, Ltd. lost its legal existence and ability to act (CR 49, 74). Essentially, all of John Gilmore's testimony is about the purported acts of an entity which did not exist and did not have the authority to act at the time of the acts described.

John Gilmore attests to the Wraparound Note only as "a true and correct copy" but does not attempt to authenticate Note or the indorsement as a business

11

record of any company (CR 49). John Gilmore does not testify that the document submitted as summary judgment evidence is the complete document indorsed by [the defunct entity] Sherwood Pines., Ltd., and does not mention or explain the missing Exhibit A.

**Affidavit of James Hale**

The affidavit of James Hale (CR 53), President of Lee Wallis, Inc., also attempts to authenticate the Wraparound Note, and the indorsement of the Note to Lee Wallis, Inc. However, neither the Wraparound Note nor the indorsement are authenticated as a business record of any company. James Hale's affidavit states only that the Wraparound Note attached to the Affidavit of Herbert Richardson is a "true and correct copy" of the Note signed by Appellants (a fact of which he could not have had any personal knowledge), that the indorsement of the Note by Lee Wallis, Inc., to SHERWOOD is a "true and correct copy" of the indorsement, and that the assignment of the Wraparound Note to SHERWOOD is a "true and correct copy" of the assignment. James Hale does not testify that the document submitted as summary judgment evidence is the complete document received by Lee Wallis, Inc. from the defunct entity Sherwood Pines, Ltd., and does not mention or explain the missing Exhibit A. James Hale's affidavit does not properly authenticate the

12

Wraparound Note, either of the indorsements of the Note, or the Assignment of the Note to SHERWOOD, all of which are critical to SHERWOOD's claim.

**Affidavit of Herbert Richardson**

The affidavit of Herbert Richardson, a former partner in Sherwood Pines, Ltd., similarly attempts to authenticate Wraparound Note, the indorsements and assignment of the Wraparound Note to SHERWOOD, merely as a "true and correct copy" of those documents (CR 62). There is no testimony that the documents are a business record of any company, and Herbert Richardson's testimony as to the actions of Sherwood Pines, Ltd., attempts to establish the purported acts of an entity which did not exist at the time of those acts. Herbert Richardson not testify that the document submitted as summary judgment evidence is the complete document received by SHERWOOD from Lee Wallis, Inc., and does not mention or explain the missing Exhibit A.

Appellants filed objections to the Affidavits of John Gilmore, James Hale and Herbert Richardson and the exhibits to those affidavits as lacking competence, hearsay, double hearsay, relevance, and to the incomplete copy of the Wraparound Note, and sought a ruling on those objections (CR 143, 398). All such objections were effectively overruled by the court.

13

**Hearsay**

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TRE 801(d). A document is hearsay when the proponent offers the document as evidence of the truth of the matters asserted in the document, and authentication of a document is required as a condition precedent to admissibility. TRE 901(a).

A bare assertion that a particular document is a specifically described item is insufficient authentication. *Mega Child Care, Inc. v. Tex. Dep't of Protective & Regulatory Servs.,* 29 S.W. 3d 303, 308 (Tex. App. - Houston [14th Dist] 2000, no pet.) Although that case found that the error was harmless where there was no allegation or suggestion that the document was not what the proponent claimed, in this case there is a very serious dispute about the terms of the Note, specifically the non-recourse feature, and the document is incomplete on its face.

A contract may sometimes be admitted as an operative fact, taking it out of hearsay status, *Boyd v. Diversified Financial Systems*, 1 S.W.3d 888 (Tex. App. - Dallas, 1999, no pet.) but to do so would presumably require that the entire document be offered into evidence. In *Boyd*, the court allowed a note and guaranty into evidence at a trial on testimony that they were true and exact copies of the

14

originals, and noted that the Defendants had not denied execution of the documents under oath. However, in *Boyd*, there was no dispute about the completeness of the documents, and the documents were admitted at a trial, rather than in a summary judgment proceeding. This case is an appeal from a summary judgment, in which the dispute is not execution of the document, but rather that the entire document was not offered into evidence, and there are critical terms which were omitted and not explained.

SHERWOOD relies on the terms of the incomplete Wraparound Note (CR 66), the indorsement to Lee Wallis, Inc. (CR 74), and the indorsement and assignment of the Wraparound Note to SHERWOOD (CR 57, 74) for the truth of the matters asserted in those documents - that Appellants have personal liability to SHERWOOD. Since SHERWOOD failed to produce the entire document or to explain the missing piece, SHERWOOD has not established the incomplete document as an operative fact. Further, SHERWOOD has not properly authenticated any of the documents as business records, and the documents do not meet any other hearsay exception.

**Barriers to Admission of the Note, Indorsements and Assignment**

SHERWOOD had two problems to solve in order to authenticate the Note, indorsements and assignment. First, whether it is possible to authenticate the acts of an entity that does not have the authority to do business at the time of those acts, and second, whether it is possible to authenticate an incomplete copy of a contract as an operative fact.

As to the first problem, the law is that a nonexistent business entity cannot enter into a contract. *Westerngeco, L.L.L. v. Input/Output, Inc.,* 246 S.W.3d 776, 786 (Tex. App.-Houston [14th Dist.] 2008, no pet). While there are exceptions for the actions of winding up the entity, none of those apply here. (These exceptions are more fully discussed under Issue 3). It stands to reason that an entity which cannot enter into a contract cannot validly assign that contract later, nor can it rely on the contract document as an operative fact, in order to make the document non-hearsay. The only possible way to authenticate the document would be as a business record of the defunct entity. However, there is no such evidence.

Further, SHERWOOD cannot treat an incomplete contract as an operative fact, and a part of the Wraparound Note is missing. Exhibit A, which is referenced on page 3 of the Note (CR 68) is not contained within any of the evidence offered by

SHERWOOD. Although the Note suggests that Exhibit A contains a description of the property securing the Note, until the missing portion of the document is produced and the complete document authenticated, no one can confirm what provisions might be contained in Exhibit A. This is especially critical where Appellants have offered evidence that the Wraparound Note was to have been a non-recourse note.

Appellants' Response to SHERWOOD's Motion for Summary Judgment provided a copy of the Commercial Contract - Improved Property, (Exhibit A to Response to Motion for Summary Judgment, CR 155, and Commercial Contract Financing Addendum, CR 169-172), a letter from the broker handling the transaction, (Exhibit K to Response to Motion for Summary Judgment, CR 231) and Appellants' affidavits that the seller financing contemplated by the contract "*will not provide for liability (personal or corporate) against maker in the event of default*" (Exhibits L through W, Response to Motion for Summary Judgment, CR 232-256, and Supp CR 3 emphasis added).

Under normal circumstances, it is a relatively simple matter to properly prove up a note, even after multiple assignments, and even where the original lender is no longer in business. Such records are normally in the possession of or transferred to someone who can testify that the records are what they purport to be, and the

17

subsequent assignees can similarly testify to a complete copy of the documents being authenticated. In this case, however, SHERWOOD was granted a judgment without producing a complete copy of the documents on which their claim is based, without proper authentication of the documents as business records of <u>any</u> holder, and over Appellants' challenges as to the missing terms of the documents. These are the kinds of issues that the rules of evidence are designed to prevent.

SHERWOOD should not be permitted to claim that Appellants all have personal liability on a note without properly authenticating complete documents, especially where Appellants provided summary judgment evidence to the contrary. Since the Note was not properly in evidence, granting the summary judgment was error. Alternatively, the incomplete document, along with Appellants' evidence that the Note was to have been non-recourse, create fact issues which preclude summary judgment.

Issue 2: The trial court erred in granting SHERWOOD's Motion for Summary Judgment based on fact issues regarding the principal and interest due on the Note.

SHERWOOD's Motion for Summary Judgment included two different affidavits from John Compton, a CPA who was retained to calculate the interest due on the Wraparound Note (CR 76, 292).

In the first affidavit, John Compton based his testimony on an incorrect original principal amount, (as well as other unauthenticated hearsay). The Wraparound Note has a discrepancy between the numerical amount and the words stated as the original principal amount of the loan (CR 66). The Wraparound Note shows that the original principal amount of the second lien is "Five Hundred *Sixty-five* Thousand Dollars ($5*69,529.87*)" (CR 67, emphasis added)[1]. John Compton's first affidavit reflects that he based his calculations on the numerical amount, $569,529.87 (CR 76). Where there is a conflict between the numerical amount and the words stating the amount of a note, the words control, Tex. Bus. & Com. Code § 3.114. Based on this incorrect principal amount, John Compton concluded in his first affidavit that the unpaid principal and interest on the Wraparound Note was $1,044,481.18.

Appellants objected to John Compton's affidavit on the basis that his affidavit contained unsupported assumptions, baseless hearsay, and hearsay within hearsay, relevancy, and parol evidence (CR 143, 146, 398). SHERWOOD then filed a Reply to the Response to Motion for Summary Judgment (CR 282) which included a second affidavit from John Compton (CR 292). In this second affidavit, John Compton bases

---

[1]Each quote of the Wraparound Note made herein is solely for the purpose of argument, and not as any waiver of Appellants' objections to the admissibility of the document.

his calculations on the correct, lower, original principal amount of $565,000.00, and reaches an unpaid balance of $1,058,640.53.

SHERWOOD submitted two conflicting affidavits from the same witness as its summary judgment evidence of the amount due. Therefore, SHERWOOD's own summary judgment evidence created a fact issue which precludes the court from granting summary judgment.

Issue 3: The trial court erred in granting SHERWOOD's Motion for Summary Judgment because there was no evidence or insufficient evidence of SHERWOOD's standing as an owner, holder, and/or holder in due course of the Note.

**SHERWOOD Does Not Have Standing as an Owner Because the Note was Void**

Sherwood Pines, Ltd. was formed on October 26, 1999, with Herbert B. Richardson and John E. Gilmore as the General Partners (Secretary of State records, Exhibit G, Appellants' Response to Motion for Summary Judgment, CR 217). The Business Organizations Code provides that a limited partnership created prior to the Texas Business Organizations Code (effective January 1, 2006), is governed by the prior Tex. Rev. Civ. Stat. art. 6132a-1, Texas Revised Limited Partnership Act,(RLPA) § 8.01, Tex. Bus. Org. Code § 402.001(b). Accordingly, Sherwood Pines, Ltd. is subject to the statutory provisions of the RLPA, rather than the current Texas Business Organizations Act.

20

RLPA § 8.01 provides that "A limited partnership is dissolved and its affairs shall be wound up" in the event of withdrawal of a general partner, unless certain exceptions apply.

The pertinent parts of RLPA § 8.01 state as follows:

"Sec. 801. A limited partnership <u>is dissolved</u> and its affairs <u>shall be wound up</u> only on the first of the following to occur:

(3) an event of withdrawal of a general partner unless:
    (A) there remains at least one general partner and the partnership agreement permits the business of the limited partnership to be carried on by the remaining general partner or general partners, and that general partner or those general partners do so; or

    (B) within 90 days after the event of withdrawal, all remaining partners (or another group or percentage of partners as specified by the partnership agreement) agree in writing to continue the business of the limited partnership and to the extent that they desire or if there are no remaining general partners, agree to the appointment, effective as of the date of withdrawal, of one or more new general partners; or

(4) entry of a decree of judicial dissolution under Section 8.02 of this Act. [emphasis added].

John Gilmore, one of Sherwood Pines, Ltd.'s general partners, resigned on November 4, 1999 (Secretary of State Records, Exhibit G, Appellants' Response to Motion for Summary Judgment, CR 220). There was no evidence or argument from SHERWOOD that any of the exceptions under § 8.01(3)(a), § 8.01(3)(b) or § 8.01(4)

21

apply. Sherwood Pines, Ltd. was therefore automatically dissolved by operation of law on November 4, 1999.

Once dissolved, Sherwood Pines, Ltd. was statutorily required to "wind up" its business affairs as soon as reasonably practicable RLPA § 8.04 (b). Any future lawful acts of Sherwood Pines, Ltd. were statutorily limited to acts of "winding up" its business affairs RPLA § 8.04(b).

Acts of "winding up" are specifically limited by statute to acts <u>disposing</u> of a dissolved limited partnership's assets and liabilities, as set forth in RPLA § 8.04(b), which states as follows:

> "(b) On the dissolution of a limited partnership and until the filing of a certificate of cancellation as provided by Section 2.03 of this Act, unless a written partnership agreement provides otherwise, the persons winding up the limited partnership's affairs **may,** in the name of and for and on behalf of the limited partnership:
>
> (1) prosecute and defend civil, criminal, or administrative suits;
>
> (2) settle and close the limited partnership's business;
>
> (3) dispose of and convey the limited partnership's property for cash, unless a written partnership agreement permits a transfer on noncash terms;
>
> (4) discharge or make reasonable provision to pay the limited partnership's liabilities; and
>
> (5) distribute to the partners any remaining assets of the limited partnership." [emphasis added].

22

The statute only allows a dissolved limited partnership to <u>dispose</u> of its assets and liabilities by winding up its business affairs, but does not allow for acquisition of new assets.

RLPA § 8.05 governs how a dissolved limited partnership is required to dispose of its assets. The statute states as follows:

"Disposition of assets: Sec. 8.05. On the winding up of a limited partnership, its assets <u>shall</u> be paid or transferred as follows:

(1) to the extent otherwise permitted by law, to creditors, including partners who are creditors other than solely as a result of the application of Section 6.06 of this Act, in satisfaction of liabilities of the limited partnership, whether by payment or the making of reasonable provision for the payment thereof;

(2) unless otherwise provided by the partnership agreement, to partners and former partners in satisfaction of the partnership's liability for distributions under Section 6.01 of this Act or payments under Section 6.04 of this Act; and

(3) unless otherwise provided by the partnership agreement, to partners first for the return of their capital and second with respect to their partnership interests, in the proportions provided by Section 5.04 of this Act." [emphasis added].

The statute does not allow a dissolved limited partnership to acquire new property, to incur a new multimillion dollar debt, or to take on long term seller financing of property acquired after dissolution as a part of winding up. Once dissolved, the only lawful acts that Sherwood Pines, Ltd. could take were to dispose of its assets and liabilities. However Sherwood Pines, Ltd., attempted to do all these

23

things, since its purchase of the Sherwood Pines Apartments in 2001, as well as the sale and seller financing in 2006 all occurred years after its 1999 dissolution.

It is well settled that a contract to do a thing which cannot be performed without a violation of the law is void, whether the parties knew the law or not. *Texas Employers' Ins. Assn. v. Taylor*, 283 S.W. 779, 780 (Tex. Com. App. 1926, judgmt. adopted); *Lewis v. Davis*, 145 Tex. 468; 199 S.W.2d 146, 148-149 (1947).

It is also well settled that a contract that is illegal is void as a matter of public policy. *Phillips v. Phillips*, 820 S.W.2d 785, 789 (Tex. 1991). Thus, once dissolved, any contract entered into by Sherwood Pines, Ltd. which resulted in Sherwood Pines, Ltd. acquiring new debt or new assets would be unlawful and, since such acts cannot be a part of "winding up".

Two years <u>after</u> its dissolution, Sherwood Pines, Ltd. exceeded the statutory boundaries placed upon a dissolved limited partnership for winding up its business affairs, when it purchased the Sherwood Pines Apartments property in 2001 (CR 173). Likewise, Sherwood Pines, Ltd., exceeded its boundaries when the property was sold to Appellants in 2006, and Sherwood Pines, Ltd. attempted to exchange the real property for a Wraparound Note payable over five years, ending June 1, 2011, more than eleven years after dissolution (CR 66).

24

For the same reason, the subsequent indorsement of the void Wraparound Note to Lee Wallis, Inc. was void, as was Lee Wallis, Inc.'s subsequent indorsement of the void Wraparound Note to SHERWOOD.   All of the contractual documents upon which SHERWOOD's suit is based are void.

Once dissolved, any act taken by Sherwood Pines, Ltd. outside of the scope of winding up was effectively the act of a nonexistent legal entity.  A nonexistent entity cannot enter into a contract.  *Westerngeco, L.L.L. v. Input/Output, Inc.,* 246 S.W.3d 776, 786 (Tex. App.-Houston [14th Dist.] 2008, no pet.).

Mutual assent is an essential element of a binding contract.  *Baylor Univ. v. Sonnichesen*, 221 S.W.3d 632, 635 (Tex. 2007).  To establish mutual assent requires a "meeting of the minds" on the essential terms of the contract.  *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008).  If one of the parties to a contract does not legally exist, no contract can be formed, as there is no meeting of the minds.  *In Re Hawthorne Townhomes, L.P. v. Branch*,  282 S.W.3d 131, 138 (Tex. App.-Dallas 2009, orig. proceeding).  The *Hawthorne Townhomes* case also involved a defunct limited partnership.  *See also HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 113 (Tex. App.-Houston [1st Dist.] 2005, no pet.), stating that if a limited partnership did not exist at the time the parties entered in a consulting agreement,

25

then the nonexistent limited partnership entity "was not, and could not have been a party to the consulting agreement."

SHERWOOD incorrectly argued at the trial court level that any post dissolution contract entered into by a dissolved limited partnership is always enforceable, even if it exceeds the statutory limits of "winding up". SHERWOOD relies on the portion of RLPA § 13.06 that states that "The forfeiture of the right to transact business in this state does not impair the validity of a contract or act of the limited partnership. . ." SHERWOOD's reliance on § 13.06 is misplaced, because while forfeiture does not impair the validity of an existing contract, it also does not create validity for a new contract entered into after the forfeiture. Nothing in the statute makes an otherwise unlawful, invalid contract lawful.

Regardless, RLPA § 13.06 is not applicable to the actions of Shewood Pines, Ltd., since it only applies to limited partnerships who have only had their right to do business forfeited, as opposed to being a limited partnership which was also dissolved.

RLPA § 13.06 states as follows:

"(a) A domestic or foreign limited partnership that fails to file a report required under Section 13.05 of this Act when due forfeits its right to transact business in this state.

(b) A <u>forfeiture</u> under this section takes effect without judicial ascertainment. The secretary of state shall enter on the record kept in the secretary's office relating to the limited partnership a notation that the right to transact business has been <u>forfeited</u> together with the date of forfeiture. . . .

(c) Unless the right of the limited partnership to transact business is revived in accordance with Section 13.07 of this Act [Section 13.07 sets forth how a limited partnership can be reinstated if it <u>forfeited</u> its right to transact business for noncompliance with Section 13.06 of this Act], the limited partnership may not maintain an action, suit, or proceeding in a court of this state, and a successor or assignee of the limited partnership may not maintain an action, suit, or proceeding in a court of this state on a right, claim, or demand arising out of the transaction of business by the limited partnership in this state. The <u>forfeiture</u> of the right to transact business in this state does not impair the validity of a contract or act of the limited partnership and does not prevent the limited partnership from defending an action, suit, or proceeding in a court of this state.

(d) This section does not affect the liability of a limited partner in the limited partnership." .

RPLA § 13.06 [emphasis added]

RPLA § 13.06 states clearly that it is only applicable to limited partnerships whose right to do business has been <u>forfeited</u>. The word "dissolved" is not contained anywhere in the statute.

Texas law requires courts to interpret a statute by following the plain reading of the words used in the statute, and to take statutes as the courts find them. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997), citing *RepublicBank*

27

*Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985). If the meaning of the statutory language is unambiguous, as it is here, then courts must adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp.* at 505.

Sherwood Pines, Ltd. was dissolved November 4, 1999, and forfeited its right to do business on October 5, 2005, both of which occurred long before the Wraparound Note on November 16, 2006. Accordingly, the Wraparound Note was a void, unlawful and unenforceable contract because Sherwood Pines, Ltd.'s act of entering into it was not a lawful act of "winding up" its business affairs.

Finally, SHERWOOD argued at the trial court that even though Sherwood Pines, Ltd. was dissolved, it continued in existence until the certificate of cancellation was filed on February 6, 2006. Assuming that Sherwood Pines, Ltd. continued to exist until the certificate of cancellation was filed, it could do so only for the limited purpose of winding up its affairs. Any act outside of the statutory criteria for winding up is unlawful and void. RLPA §§ 8.04, 8.05. However, even this argument would not extend Sherwood Pines, Ltd.'s existence long enough to validate the Wraparound Note, since the certificate of cancellation is more than eight months prior to the Wraparound Note.

Standing is an essential element of subject matter jurisdiction. *El T. Mexican Restaurants, Inc. v. Bacon*, 921 S.W.2d 247 Tex. App.-Houston [1st Dist.] 1995, writ denied). SHERWOOD is required to show that it has standing in order to pursue a claim to enforce the Wraparound Note. SHERWOOD does not have standing to enforce a void note, which SHERWOOD obtained by way of two subsequent void indorsements of that note.

**SHERWOOD Does Not Have Standing as a Holder, Because All Attempted Indorsements Were Incomplete.**

SHERWOOD's pleadings have consistently contended that the Wraparound Note is a negotiable instrument. Assertions of fact in the live pleadings of a party are formal judicial admissions. *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983). The facts alleged or admitted in the live pleadings of a party are binding on the pleader. *Houston First Am. Sav*. at 769. A judicially admitted fact is established as a matter of law, and the admitting party may not dispute it or introduce evidence contrary to it. *Peck v. Peck*, 172 S.W.3d 26, 31 (Tex.App.-Dallas 2005, pet. denied); *Dutton v. Dutton*, 18 S.W.3d 849, 853 (Tex. App.-Eastland 2000, pet. denied).

Having judicially admitted the Wraparound Note is a negotiable instrument, SHERWOOD had the burden to prove it was the lawful holder of the Wraparound

Note. SHERWOOD's burden included proving Sherwood Pines, Ltd. properly indorsed the Wraparound Note to Lee Wallis, Inc., and that thereafter Lee Wallis, Inc. properly indorsed the Wraparound Note to SHERWOOD.

In order to properly indorse the Wraparound Note, the indorsements both had to be legally effective. However, neither indorsement was legally effective, as in both instances the instrument purportedly indorsed was incomplete because Exhibit A to the Wraparound Note is apparently missing. Where there is an attempted transfer of less than the entire instrument, the transferee obtains no rights to enforce the instrument. The transferee cannot be a holder of the instrument, because it is not in possession of the complete document. Tex. Bus. & Com. Code § 3.203(d).

The second full paragraph of page two of the Wraparound Note states as follows:

> "The payment hereof is secured by a vendor's lien retained in Deed of even date herewith to the undersigned, and is additionally secured by a Deed of Trust to Hank Schwaeble, Trustee, said Deed and Deed of Trust covering and conveying the property described in attached Exhibit "A". [emphasis added].

However, Exhibit A was not attached either to the Wraparound Note or the subsequent attempted assignments. (Wraparound Note, CR 66, purported indorsement from Sherwood Pines, Ltd. to Lee Wallis, Inc., CR 74, purported

30

Assignment from Lee Wallis, Inc. to SHERWOOD, Exhibit B, Affidavit of James Hale SHERWOOD's Motion for Summary Judgment, CR 57).

SHERWOOD's summary judgment evidence reflects that the attempted indorsement of the Wraparound Note from Sherwood Pines, Ltd. to Lee Wallis, Inc. was missing at least one page, meaning what Lee Wallis, Inc. received was an incomplete negotiable instrument.  Likewise, the Wraparound Note purportedly indorsed from Lee Wallis, Inc. to SHERWOOD was also missing Exhibit A. SHERWOOD's summary judgment evidence established only that the parties attempted to indorse incomplete negotiable instruments.

An attempted indorsement of an incomplete negotiable instrument is ineffective, void and of no force or effect.

> "If a transferor [of a negotiable instrument] purports to transfer less than the entire instrument, negotiation of the instrument does not occur."  [emphasis added].  Tex. Bus. & Com. Code § 3.203(d).

SHERWOOD has judicially admitted the Wraparound Note was a negotiable instrument.   No attempted indorsement of a negotiable instrument lawfully takes place unless the entire instrument is transferred.  To meets its burden of establishing that it was entitled to summary judgment,  SHERWOOD had to offer viable summary judgment evidence proving the entire negotiable instrument (the Wraparound Note)

31

was lawfully indorsed first from Sherwood Pines, Ltd. to Lee Wallis, Inc., and then lawfully indorsed from Lee Wallis, Inc. to SHERWOOD. Therefore, unless the entire Wraparound Note was indorsed both times, then there was no negotiation of the Wraparound Note and the transferees obtained no rights to enforce the instrument.

SHERWOOD asserted at the trial court level that even if Exhibit "A" was missing from the copies of the Wraparound Note and its subsequent indorsements, the trial court's ruling denying Appellants' objections to SHERWOOD'S summary judgment evidence constituted "harmless error."

To the contrary, the missing Exhibit A has the legal impact of rendering the alleged indorsements of the Wraparound Note invalid. If the indorsements are invalid, then SHERWOOD is not a lawful holder of the Wraparound Note, and thus lacks standing to sue to enforce it.

SHERWOOD failed to meet its burden that it is the owner and/or holder of the Wraparound Note and that it has standing to bring this lawsuit when it failed to proffer into evidence a copy of both indorsements of a complete negotiable instrument. At best, a material fact issues exist as to whether either indorsement of the Wraparound Note were legally effective. Either way, the trial court erred in granting summary judgment for SHERWOOD.

32

**SHERWOOD Does Not Have Standing as a Holder in Due Course Because It Was Aware of the Prior Default**

Under Texas law, for an assignee of a negotiable instrument to qualify as a holder in due course, the assignee/holder must prove that "the holder took the instrument for value, in good faith, without notice that the instrument is overdue or has been dishonored. . ." Tex. Bus. & Com. Code § 3.302. However, at the time the Wraparound Note was endorsed to SHERWOOD, SHERWOOD had actual and/or constructive notice that the Wraparound Note was overdue, in default or had been dishonored.

The Wraparound Note required Appellants to assume the First Lien Note no later than April 20, 2007, or pay a two percent penalty. (Wraparound Note, Exhibit C-1, SHERWOOD's Motion for Summary Judgment, CR 67). However, the First Lien Note was not assumed, and the two percent penalty payment was not made by any of the makers. (Affidavits of Appellants, Exhibits L through W, Response to Motion for Summary Judgment, CR 232-256, and Supp. CR 3-4) Therefore, the Wraparound Note was already in default in 2007.

Herbert B. Richardson was a general partner of Sherwood Pines, Ltd. As a general partner, Richardson would have been aware of the default on the Wraparound Note when Sherwood Pines, Ltd. endorsed the Wraparound Note on

33

March 10, 2008, to Lee Wallis, Inc. (Affidavit of Herbert B. Richardson, Exhibit C to SHERWOOD's Motion for Summary Judgment, CR 62, and Secretary of State's Records, Exhibit G, Response to Motion for Summary Judgment, CR 218). Herbert B. Richardson was also a "Governing Person" of SHERWOOD at the time that entity was formed in 2014. (Secretary of State records, Exhibit H, Response to Motion for Summary Judgment, CR 226).

Through Herbert B. Richardson, SHERWOOD had actual and/or constructive knowledge that the Wraparound Note was in default at the time it received the purported assignment and indorsement of the Wraparound Note.

SHERWOOD is also prevented from being a holder in due course, because only a part of the Payee's rights under the Wraparound Note were transferred. Although not indicated in the indorsement, the right to receive the two percent penalty payment was retained by Sherwood Pines, Ltd. when it indorsed the note to Lee Wallis, Inc. (Indorsement by Sherwood Pines, Ltd. to Lee Wallis, Inc., Exhibit C-1, SHERWOOD's Motion for Summary Judgment, CR 74, and Assignment by Sherwood Pines, Ltd. to , Lee Wallis, Inc. Exhibit I, Response to Motion for Summary Judgment, CR 229). A partial assignee of a note is not a holder in due course. *First National*

34

*Acceptance Company v. Dixon*, 154 S.W.3d 218, (Tex. App. Beaumont-2004, pet. denied.)

SHERWOOD received the Wraparound Note with actual and/or constructive notice that the Note was in default. Therefore, SHERWOOD is not a holder in due course, and accepted Wraparound Note subject to any claims or defenses that Appellants may assert.

SHERWOOD has no standing as an owner, holder or holder in due course of the Wraparound Note, and therefore no legal basis on which to enforce the Note against Appellants.

Issue 4:     The trial court erred in granting SHERWOOD's Motion for Summary Judgment and denying Appellants' Motion for Summary Judgment based on the two year statute of limitations pursuant to Tex. Prop. Code § 51.003.

Appellants filed a Supplemental Response to the Motion for Summary Judgment, and Cross Motion for Summary Judgment, based on the two year statute of limitations under Tex. Prop. Code § 51.003 (CR 318). That statute provides:

> "If the price at which real property is sold at a foreclosure sale under Section 51.002 [non-judicial foreclosure] is less than the unpaid balance of the indebtedness secured by the real property, resulting in a deficiency, any action brought to recover the deficiency must be brought within two years of the foreclosure sale and is governed by this Section."

35

SHERWOOD's deficiency claim was filed more than four years after foreclosure of the property which secured the Wraparound Note, and is therefore barred by the statute of limitations.

When Sherwood Pines, Ltd., bought Sherwood Pines Apartments, the purchase was financed by a First Lien Note dated June 27, 2001 between Sherwood Pines, Ltd. as borrower, and Morgan Guaranty Trust Company of New York as lender (CR 173, 180).

In 2006, Sherwood Pines, Ltd. sold the real property securing the First Lien Note to Appellants. (SHERWOOD's Motion for Summary Judgment, page 2, CR 33; SHERWOOD's Original Petition, pages 8-9, CR 12-13; and Commercial Contract - Improved Property, Exhibit A, Appellants' Response to Motion for Summary Judgment, CR 155). To finance the sale, Sherwood Pines, Ltd., entered into a Wraparound Promissory Note (Wraparound Note), with Appellants as makers and Sherwood Pines, Ltd as payee. (SHERWOOD's Motion for Summary Judgment, CR 66, Appellants' Response to Motion for Summary Judgment Exhibit A, CR 169).

**The "Indebtedness" of the Wraparound Note**

The Wraparound Note SHERWOOD seeks to enforce contains language specifically tying it and the First Lien Note together. The second paragraph of the Wraparound Note stated in pertinent part as follows:

> "The First Lien Principal Amount shall be coextensive to, and include, the entire amount of principal, interest, taxes, reserves, fees and charges comprised by and owing on that certain Fixed Rate Note executed on June 27, 2001 (between Sherwood Pines, Ltd., as maker, and Morgan Guaranty Trust Company of New York..., and secured by that certain deed of trust dated June 27, 2001..." (CR 66).

The Wraparound Note further states on page 3, the sixth paragraph, in pertinent part:

> "This is a wrap-around note. Included in the principal amount of this note is the unpaid balance left due and owing on the Wrapped Note..." (CR 68).

The second paragraph on page 3 of the Wraparound Note provides that the entire indebtedness of the Wraparound Note was secured by its Deed of Trust, as follows:

> "The payment hereof is secured by a vendor's lien retained in Deed of even date herewith to the undersigned, and is additionally secured by a Deed of Trust to Hank Schwaeble, Trustee, said Deed and Deed of Trust covering and conveying the property described in attached Exhibit A."

(SHERWOOD's Motion for Summary Judgment, Exhibit C-1, CR 68).

37

The real property described in the Deed of Trust securing the Wraparound

Note is the exact same real property which also secured the First Lien Note ("Original

Fixed Rate Note" or "Wrapped Note").

**The "Indebtedness" secured by the Wraparound Note's Deed of Trust**:

The Deed of Trust securing the Wraparound Note further defined the

"Indebtedness" being secured as follows:

> "Indebtedness. The indebtedness secured by this Deed of Trust (the "Indebtedness") includes all other indebtedness and obligations of Borrower [Appellants] to Beneficiary [Sherwood Pines, Ltd.], whether presently existing or in any manner or means hereafter incurred..." (Appellants' Response to Motion for Summary Judgment, Deed of Trust, Exhibit C Page 9, CR 197, 205).

> Page 2 of the Deed of Trust stated securing the Wraparound Note states:

> "This conveyance, however, is made in Trust to secure payment of one (1) promissory note of even date herewith in the principal sum of Three Million Four-Hundred Thousand and NO/100 dollars ($3,420,000.00) executed by Grantors [Appellants], payable to the order of Sherwood Pines, Ltd..."

> As more particularly described below, this conveyance is intended to secure wraparound financing for an existing debt on the Property, and said debt is sometimes referred to as the "Underlying Debt."

(Deed of Trust, page 2, Exhibit B, Appellants' Response Motion for Summary Judgment, CR 198).

The plain reading of the documentation shows that the principal balance of the Wraparound Note <u>included</u> the principal balance that Sherwood Pines, Ltd. owed on the First Lien Note. Both notes were secured by the exact same real property, by two separate Deeds of Trust. (Deed of Trust securing First Lien Note, Exhibit B, Appellants' Response to Motion for Summary Judgment, CR 173, and Deed of Trust securing Wraparound Note, Exhibit D, Appellants' Response to Motion for Summary Judgment, CR 197).

The holder of the First Lien Note foreclosed upon the real property securing both notes on April 6, 2010 (Substitute Trustee's Deed, Exhibit F, Response to Motion for Summary Judgment, CR 209). The foreclosure sale price was apparently sufficient to wipe out the remaining debt owed on the First Lien Note. Since a portion of the Wraparound Note included the amount owed under the First Lien Note, that portion of the indebtedness of the Wraparound Note was effectively paid by applying the foreclosure sale price to the balance due. SHERWOOD's claim against Appellants is for a deficiency balance which remained unpaid following the foreclosure of the property securing both the First Lien Note and the Wraparound Note.

The very definition of "deficiency" is the amount remaining on a debt after applying the proceeds realized at a foreclosure sale. *Moayedi v. Interstate*

39

*35/Chisam Road, L.P.,* 438 S.W.3d 1 (Tex. 2014). Since the foreclosure sales price was "less than the unpaid balance of the indebtedness secured by the real property, resulting in a deficiency," then as a matter of law, SHERWOOD's cause of action is a deficiency claim and therefore governed by Tex. Prop. Code § 51.003. That statute requires a deficiency claim to be brought within two years of the April 6, 2010 foreclosure. SHERWOOD's claim, however, was brought more than four years after the foreclosure, on June 5, 2014 (CR 5).

In an effort to circumvent the missed statute of limitations, SHERWOOD has referred to its deficiency action as a suit on a negotiable instrument. However, artful pleading does not alter the underlying nature of a claim. *Omaha Healthcare Ctr. v. Johnson*, 334 S.W.3d 392, 394 (Tex. 2011). It is worth noting that SHERWOOD's argument would make the statute meaningless, since virtually every deficiency claim will be based on a negotiable instrument evidencing the debt which was secured by the real property. SHERWOOD can call its deficiency action any name it wishes, but by statutory definition, it is a deficiency suit and is subject to the two year statute of limitations.

SHERWOOD further contends this is not a deficiency suit because neither SHERWOOD nor the prior holders of the Wraparound Note performed the

40

foreclosure. However, this argument attempts to add new element(s) to § 51.003(a) that the statute does not contain. The statute applies to <u>any</u> action to collect an unpaid balance remaining *after foreclosure upon the real property securing the indebtedness*. The statute does not require that the foreclosure be performed by the same creditor seeking to recover the unpaid balance of the indebtedness, or that the deficiency result from foreclosure of the same deed of trust.

For SHERWOOD's suit to constitute a deficiency action, the <u>only</u> requirement is that the price at which the real property is sold at a foreclosure sale be less than the unpaid balance of the indebtedness secured by the real property. This is exactly the basis of SHERWOOD's claim.

**Rules of Statutory Construction**

The rules of statutory interpretation as set forth by the Texas Supreme Court require a statute to be read in accordance with the plain language used in the statute. Additional language or elements may not be added, and courts must take statutes as they find them. *St. Luke's Episcopal Hosp.* at 505 (Tex.1997), citing *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex.1985). If the meaning of the statutory language is unambiguous, then courts must adopt the

interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp., at 505.*

Under the plain reading of § 51.003(a), it is not necessary that the holder of the Wraparound Note have conducted the foreclosure, nor that the foreclosure have been conducted by virtue of the same Deed of Trust securing the Wraparound Note. Neither one of those two additional elements are contained in the statute.

In construing a statute, the court's objective is to determine and give effect to legislative intent. A court must look at the statute's plain and common meaning, and not look to extraneous matters for an intent that the statute does not state. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000) and *Monsanto Co. v. Cornerstones Mun. Util. Dist.,* 865 S.W.2d 937, 939 (Tex. 1993); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 352 (Tex. 1990), stating that in interpreting a statute, the Legislature's intent is determined from the plain and common meaning of the words used in the statute.

Using all of the foregoing criteria for statutory construction as outlined by the Texas Supreme Court, Tex. Prop. Code § 51.003(a) should be interpreted by this Court exactly as it is worded. As statutorily defined, SHERWOOD has filed a deficiency action.

There is no case law on point for the question of whether the two year statute of limitations applies in this case. The two closest cases factually are *Sowell v. International Interests, LP*, 416 S.W.3d 593, (Tex. App.-Houston [14th Dist] 2013, pet. denied), and *Mays v. Bank One, N.A.*, 150 S.W.3d 897 (Tex. App.-Dallas 2004, no pet.), but both are readily distinguishable.

The facts in *Sowell* were very different, since the lender was suing a guarantor, under a guaranty agreement, in a suit brought within two years of the foreclosure. The *Sowell* court examined a conflict in the application of the two and four year limitations statutes, and held that the suit was governed by the four year statute of limitations, but that limitations would be extended until two years after the date of the foreclosure sale. *Sowell* at 599. The lender in *Sowell* filed suit within two years of the foreclosure, and so the suit was timely. This case is not a suit on a guaranty agreement, but a suit against the makers of the Note, suit was filed well outside the two year statute.

The *Mays* case has a similar fact pattern to this case, since it was a suit by a second lien holder against the maker of a note. However, the issue in *Mays* was not whether the 2 year statute of limitations applied (Tex. Prop. Code § 51.003), but how to calculate the deficiency on the second lien note (Tex. Prop. Code § 51.005). The

*Mays* court found that although the foreclosure of the first lien extinguished the second lien (creating a deficiency), *Mays* could not use the foreclosure bid price of the first lienholder (Bank of America) to determine the deficiency on Bank One's second lien. The *Mays* court was considering an entirely different statute, on a different question than the issue raised in this case.

**The Two Statutory Two Year Limitations Period Expired Prior to SHERWOOD's Suit**

The foreclosure took place on April 6, 20<u>10.</u> (Appellants Response to Motion for Summary Judgment, Exhibit D, Substitute Trustee's deed, CR 209). This deficiency action was filed on June 5, 20<u>14</u>, more than four years after the foreclosure. (SHERWOOD's Original Petition, CR 5). Therefore, SHERWOOD's claim is time barred. The trial court erred in granting SHERWOOD's Motion for Summary Judgment, and in denying Appellant's Cross Motion for Summary Judgment.

Issue 5: The trial court erred in granting SHERWOOD's Motion for Summary Judgment based on fact issues of fraud, fraudulent inducement and fraud in a real estate transaction.

At the time Appellants entered into the contract to purchase the Sherwood Pines Apartments from Sherwood Pines, Ltd., the parties agreed that the Wraparound Note would be a nonrecourse note, with no personal or corporate liability to in the event of a default**.** (Exhibit A, Commercial Contract - Improved

44

Property, Response to Motion for Summary Judgment, CR 155; Commercial Contract Financing Addendum, Exhibit K, Response to Motion for Summary Judgment, CR 169-172; Letter from the broker handling the transaction, Exhibit K, Response to Motion for Summary Judgment CR 231, and Appellants' affidavits Exhibits L through W, CR 232-256 and Supp CR 3-4, Response to Motion for Summary Judgment).

The original sales contract that gave rise to the Wraparound Note specifically provided that "The note will not provide for liability (personal or corporate) against the maker in the event of default." (Exhibit A, Commercial Contract - Improved Property, Seller Financing Addendum, page two, paragraph C, CR 155). The broker who sold the property confirms that the intention of the parties was that the Wraparound Note was to have been a nonrecourse note (Letter from the broker handling the transaction, Exhibit K, Response to Motion for Summary Judgment CR 231). But for the fraudulent misrepresentation by Sherwood Pines, Ltd. regarding the nature of the Wraparound Note, Appellants would not have signed the Wraparound Note. SHERWOOD's Summary Judgment Motion should have been denied based upon the fact issues arising from the defenses based in fraud.

The "merger clause" in the Wraparound Note does not preclude Appellants from introducing summary judgment evidence that the contract was supposed to

contain different terms than those which appear in the subject terms. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co.,* 341 S.W.3d 323, 328-337 (Tex. 2011).

In its holding in *Italian Cowboy*, the Texas Supreme Court distinguished its earlier holdings in *Schlumberger Technology Corp. v. Swanson,* 959 S.W.2d 171 (Tex. 1997) and *Forest Oil Corp. v. McAllen,* 268 S.W.3d 51 (Tex. 2008), in which the court had enforced a merger clause and precluded evidence of fraud. In allowing the admissibility of extrinsic evidence of fraud and terms which differed from those in the final contract, the *Italian Cowboy* Court distinguished the contract before it from those in the *Schlumberger* and *Forest Oil* decisions. The Court held that since the contract at issue did not contain express language disclaiming reliance, extrinsic evidence of fraud was admissible. The Court reiterated its holdings in previous decisions that to disclaim reliance in a merger clause, the parties must use clear and unequivocal language. *Italian Cowboy* at 336, citing the Court's earlier holdings in *Schlumberger* at 179-180 and *Forest Oil* at 62.

Without a clearly expressed and unequivocal intent to disclaim reliance or waive claims for fraudulent inducement, a merger clause has never had the effect of precluding claims for fraudulent inducement. *Italian Cowboy* at 334. The language of the Wraparound Note before this Court also fails to disclaim reliance. In fact, the

merger clause at issue contains language similar to the merger clause in the *Italian Cowboy* decision.

The pertinent language in the Wraparound Note in this case states:

"THIS NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PAYEE AND THE MAKER AND EXCEPT AS OTHERWISE EXPRESSLY INDICATED ABOVE MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT AGREEMENTS OF THE PARTIES AND MAKER AGREES THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN PAYEE AND MAKER." (Wraparound Note, SHERWOOD's Motion for Summary Judgment, Exhibit C-1, Page 4, CR 69).

The pertinent language in *Italian Cowboy* case was:

"14.21 ***Entire Agreement.*** This lease constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and no subsequent amendment or agreement shall be binding upon either party unless it is signed by each party..." *Italian Cowboy* at 328.

The language of the two clauses is effectively the same, and neither clause contains language specifically waiving "reliance" or specifically "waiving a claim for fraudulent inducement". Therefore, the merger clause in the Wraparound Note does not preclude evidence of fraud and/or fraudulent inducement.

Summary judgment was improper because Appellants' summary judgment evidence raised a material fact issue that the Wraparound Note was to have been a nonrecourse note.

**PRAYER**

Appellants DANIEL MANDARINO, CARRIE MANDARINO, LAURA DOYLE, ROBERT CHURCH, BRETT BEALS and LINDA BEALS as Trustees of the Beals Family Revocable Trust, ROBERT CHURCH, ROBERT A. SCHALBE, WILLIAM H. GAY, JR., RICCARDIO D. GAY, ERIC JOHNSTONE, RAFAL ZIELINSKI and VALLY MESTRONI pray that the court reverse the judgment of the trial court, and render judgment in favor of Appellants.

Respectfully Submitted,
WALTER LAW FIRM, P.C.


 /s/ Teri A. Walter
TERI A. WALTER
Texas Bar No. 20815100
GLEN NORDT
Texas Bar No. 15076600
1111 North Loop West Suite 1115
Houston, TX  77008
Phone          713 529-2020
Fax             713 529-2266
Email: twalter@prevaillawyers.com
Email: gnordt@prevaillawyers.com
ATTORNEY FOR APPELLANTS
DANIEL   MANDARINO,   CARRIE   MANDARINO,
LAURA DOYLE, ROBERT CHURCH, BRETT
BEALS and LINDA BEALS as Trustees fo the
Beals Family Revocable Trust, ROBERT
CHURCH, ROBERT A. SCHALBE, WILLIAM H.
GAY,  JR.,  RICCARDIO  D.  GAY,  ERIC   JOHNSTONE,
RAFAL ZIELINSKI and VALLY MESTRONI

48

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been mailed to all parties of record in this matter in accordance with the Texas Rules of Civil Procedure, by certified mail, return receipt requested, by hand delivery or by fax, on this the  6th  day of  August  , 2015.


 /s/ Teri A. Walter
Teri A. Walter


Douglas A. Daniels
Andrea L. Gentle
Daniels & Gentle, LLP
6363 Woodway Suite 980
Houston, TX  77057

No. 2014-32347

| | | |
|---|---|---|
| SHERWOOD LANE INVESTMENTS, LLC, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | |
| CAL STATE INVESTMENT LIMITED PARTNERSHIP, EUGENE E. VOLLUCI, DANIEL MANDARINO, CARRIE MANDARINO, ARMANDO LA FONTAINE, JENNIFER LA FONTAINE, LAURA DOYLE, ROBERT CHURCH, BRET BEALS AND LINDA BEALS as Trustees of the BEALS FAMILY REVOCABLE TRUST, ROBERT A. SCHALBE, WILLIAM H. GAY, JR., RICCARDIO D. GAY, ERIC JOHNSTONE, RAFAL ZIELINSKI, and VALLY MESTRONI, | § § § § § § § § § § § § § § | HARRIS COUNTY, TEXAS |
| Defendants, | § § | 164 TH JUDICIAL DISTRICT |

## FINAL JUDGMENT

THIS COURT, having heard and considered Plaintiff SHERWOOD LANE INVESTMENTS, LLC's Motion for Summary Judgment, together with the response of Defendants, and having reviewed all of the summary judgment evidence properly submitted by the parties, finds that Plaintiff's Motion should be, and is hereby, GRANTED.

It is therefore ORDERED, AJUDGED, and DECREED that Plaintiff SHERWOOD LANE INVESTMENTS, LLC have and recover from Defendants, CAL STATE INVESTMENT LIMITED PARTNERSHIP, EUGENE E. VOLLUCI, DANIEL MANDARINO, CARRIE MANDARINO, LAURA DOYLE, ROBERT CHURCH, BRET BEALS AND LINDA BEALS as Trustees of the BEALS FAMILY REVOCABLE TRUST, ROBERT A. SCHALBE,

Appendix 1.1

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

7/28/2014 11 06:26 AM
Chris Daniel - District Clerk
Harris County
Envelope No 1959202
By: WILLIAMS, CHANDA D

WILLIAM H. GAY, JR., RICCARDIO D. GAY, ERIC JOHNSTONE, RAFAL ZIELINSKI, and VALLY MESTRONI, jointly and severally, damages representing outstanding principal plus accrued and unpaid interest on the promissory note made the basis of this suit, in the amount of $1,044,481.18, together with post-judgment interest to accrue in the amount of $329.78 per day for each day between July 14, 2014 and the date this judgment is paid in full. In addition, Plaintiff shall have and recover from Defendants the sum of $16,537.50 for reasonable and necessary attorney's fees incurred in bringing this action. In addition, Plaintiff shall have and recover its taxable court costs for this suit, and the clerk is hereby directed to prepare a bill of costs representing same.

This is a final judgment as to all claims and all parties; all relief not expressly granted herein is denied.

ENTERED this _19th_ Day of _December_, 2014.

DEC 1 9 2014

_____
JUDGE PRESIDING

Unofficial Copy Office of Chris Daniel District Clerk

Appendix 1.2

*SHERWOOD PINES*

# WRAPAROUND PROMISSORY NOTE

$3,420,000                        Harris County, Texas                    October 16, 2006

FOR VALUE RECEIVED, after date, in the manner, on the dates, and in the amounts so herein stipulated, the undersigned, **CAL STATE INVESTMENT LIMITED PARTNERSHIP**, whose address is 27520 Hawthorne Blvd. No. 102, Palos Verdes, California, **DANIEL MANDARINO** and **CARRIE MANDARINO**, husband and wife, **ARMANDO LA FONTAINE** and **JENNIFER LA FONTAINE**, husband and wife, **LAURA DOYLE**, a married woman, **ASE VENTURES, LLC** a Nevada limited liability company, **RSMT INVESTMENTS, LLC**, a Nevada limited liability company , **ROBERT CHURCH**, a single man, **BRET BEALS** and **LINDA BEALS**, as Trustees of the **BEALS FAMILY REVOCABLE TRUST**, **ROBERT A. SCHALBE**, a single man, **WILLIAM H. GAY, Jr.**, a married man as his sole and separate property, and **RICCARDIO D. GAY**, a married man as his sole and separate property, both as tenants in common, **ERIC JOHNSTONE**, a single man, and **RAFAL ZIELINSKI** and **VALLY MESTRONI**, husband and wife, (collectively, "Maker"), hereby promise to pay to the order of **SHERWOOD PINES LTD.** a Texas limited partnership ("Lender"), whose address for place of payment and delivery of notices is 503 Explorer, Austin, Texas, 78734, or at such other location as Lender or any subsequent holder of the Note (the "Payee") at Harris County, Texas, or at such other place as Payee may from time to time designate, the sum Three Million Four-Hundred Twenty Thousand Dollars ($3,420,000.00), in lawful money of the United States of America, together with interest thereon from date hereof until maturity (the indebtedness created by this document hereafter referred to as the "Note"). The term of this Note shall be Five Years from the date of execution, with specific payment and maturity dates set forth below. The amounts included in this Note shall be divided into two distinct parts, the First Lien Principal Amount and the Second Lien Principal Amount. The two components of the loan shall bear interest at two separate rates as part of the payment schedule of this Note, combining to form one Monthly Payment, as set forth below.

The First Lien Principal Amount shall be coextensive to, and include, the entire amount of principal, interest, taxes, reserves, fees and charges comprised by and owing on that certain Fixed Rate Note executed on June 27, 2001, between Sherwood Pines, Ltd., as maker, and Morgan Guaranty Trust Company of New York, a New York banking corporation, as lender (the "Wrapped Note"), designated as Loan No. V_17141, and secured by that certain deed of trust dated June 27, 2001, in favor of David Pitschmann, Trustee and was recorded on June 28, 2001, under Clerk's File No. V141617 of the Official Public Records of Real Property of Harris County Texas.

The portion of the Monthly Payment of the Note attributable to the First Lien Principal Amount shall be due and payable in equal monthly installments of Twenty-two Thousand Three Hundred Seventy-five and 14/100 Dollars ($22,375.14), the first of such installments shall be due and payable on the first day of November, 2006, and a like installment shall be due and payable on the same day of each succeeding month thereafter for the term of this note, subject to the additional terms below, until June 1, 2011, at which time all outstanding principal and interest shall be due and payable in full. Each installment shall be applied first to the payment of accrued interest due on the unpaid principal balance and the remainder of each installment shall be applied

Appendix 2.1

to the reduction of principal. The precise amount of the above installment is subject to change as the precise amount owing monthly on the Wrapped Note may change, due to changes in escrow amounts required by that lender. Matured, unpaid principal and interest on the First Lien Principal Amount shall bear interest at the lesser of (a) the maximum rate permitted by applicable law, or (b) the greater of (i) five percent (5%) above the applicable interest rate or (ii) five percent (5%) above the Prime Rate as published in the Wall Street Journal, until paid.

The Second Lien Principal Amount shall be Five Hundred Sixty-five Thousand Dollars ($569,529.87). The Second Lien Principal Amount shall bear interest at the rate of Five and One Half Percent (5.5%) percent per annum, payable as hereinafter provided; matured, unpaid principal and interest shall bear interest at the rate of Eighteen Percent (18%) per annum, until paid.

Of the 5.5% annual interest for the Second Lien Principal Amount, Two and One Half Percent (2.5%) may be deferred until maturity, when all such sums are due and payable.

The non-deferrable interest of the Second Lien Principal Amount shall be due and payable as part of the Monthly Payment in equal monthly installments of One Thousand Four Hundred Twenty-three and 82/100 Dollars ($1423.82) each, the first of such installments shall be due and payable on the first day of November, 2006, and a like installment shall be due and payable on the same day of each succeeding month thereafter for the term of this note, subject to the additional terms below, until June 1, 2011, at which time all outstanding principal and interest shall be due and payable in full. Each installment shall be applied first to the payment of accrued interest due on the unpaid principal balance and the remainder of each installment shall be applied to the reduction of principal. Installment payments must be received on or the seventh (7th) day of each month or Maker shall be considered in default.

The total monthly payment due each month for this Note, composed of both the First Lien Principal amount and the Second Lien Principal Amount, shall be Twenty-Three Thousand Seven Hundred Ninety-eight and 96/100 Dollars ($23,798.96).

Maker shall use best efforts to formally assume the Wrapped Note within six months of the date of execution of this Note. Such assumption, which must include a full release from the holder of the Wrapped Note regarding any continuing liability of Lender, shall be the responsibility of Maker and shall be accomplished independently of Lender. If Maker successfully assumes the Wrapped Note, the First Lien Principal Amount of this Note shall be considered satisfied, and only the Second Lien Principal Amount of this Note shall remain enforceable. Under such circumstances, the Monthly Payment will be adjusted downward accordingly to take into account satisfaction of the First Lien Principal Amount.

If Maker does not formally assume the Wrapped Note within six months of the date of execution of this Note, Maker shall pay Lender two (2) points (equal to two percent of the outstanding loan balance) on the outstanding principal balance of the loan as of April 12, 2007. Such payment shall be due and payable by Maker to Lender in cash by April 20, 2007. Failure to make such payment shall be considered a default under this Note.

2       Appendix 2.2

This Note may be prepaid in whole or in part at any time without penalty, and interest shall cease on any amount so prepaid.

The payment hereof is secured by a vendor's lien retained in Deed of even date herewith to the undersigned, and is additionally secured by a Deed of Trust to Hank Schwaeble, Trustee, said Deed and Deed of Trust covering and conveying the property described in attached Exhibit "A."

It is expressly agreed and understood that time is of the essence and that if default shall be made in the payment of this Note as the same shall become due and payable; or if there be default in any of the terms of the Deed of Trust securing this Note; or should Maker become insolvent or make an assignment for the benefit of creditors; or should the holder and owner or any agent thereof, of the Underlying Indebtedness described hereafter make demand for full payment upon Payee herein; then in any such event, Payee may, at his option, declare the entirety of this Note, together with all accrued but unpaid interest, immediately due and payable, without notice, demand or presentment, all of which are hereby waived, and failure to exercise said option shall not constitute a waiver on the part of Payee of the right to exercise this option at any other time.

Maker hereby agrees to pay all expenses incurred, including reasonable attorney's fees, if this Note is placed in the hands of an attorney for collection, or if collected by suit or through any probate, bankruptcy or any other legal proceedings.

Each maker, surety and endorser waives demand, grace, notice, presentment for payment, and protest and agrees and consents that this Note and the liens securing its payment may be renewed, and the time of payment extended without notice, and without releasing any of the parties.

This is a wrap-around note. Included in the principal amount of this Note is the unpaid balance left due and owing on the Wrapped Note, that payment of which indebtedness the maker hereof has not assumed, but will make best efforts to assume. The Lender herein shall make all payments on the Wrapped Note as they become due and payable, which Wrapped Note shall be paid in full nor later than the time at which this Note is fully and finally paid (either through prepayment or in accordance with the terms hereof), or the Wrapped Note is formally assumed by Maker to release Lender from all obligations thereunder with the express consent of the holder of the Wrapped Note. In the event there is a default in the payment of said Wrapped Note, and/or the terms and conditions of the lien instruments securing same, then the Maker or other owner of the hereinabove described property may correct said default or defaults by payment thereof, and the amount of any funds expended in such connection shall be considered the payment of this Note and any payment so made and expenses incurred and paid in connection therewith (including attorney's fees) shall be credited and applied to this Note. An amount equal to the amount of any Late charges or other penalties paid by Maker as a result of any default in payment by Lender of the Wrapped Note, provided Maker is not in default in its payment obligations under the terms of this Note, shall also be credited and applied to the Second Lien Principal Amount of this Note.

This Note may be executed in any number of counterparts, each of which shall constitute an original, but all of which when taken together shall constitute one and the same instrument.

3        Appendix 2.3

THIS NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PAYEE AND THE MAKER AND EXCEPT AS OTHERWISE EXPRESSLY INDICATED ABOVE MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT AGREEMENTS OF THE PARTIES AND MAKER AGREES THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN PAYEE AND MAKER.

MAKERS:

CAL STATE INVESTMENT, L.P.
a Nevada limited partnership

By: _____
    Eugene E. Vollucci, General Partner


_____
ARMANDO LA FONTAINE


_____
JENNIFER LA FONTAINE


RMST INVESTMENTS, LLC,
a _____ limited liability company


By: _____
    Richard Church, Managing Member


_____
RAFAL ZIELINSKE
    ZIELIVJKA


_____
VALLY MESTORINI


_____
ROBERT CHURCH


_____
DANIEL MANDARINO


_____
CARRIE MANDARINO


_____
LAURA DOYLE


ASE ENTERPRISES, Ventures, LLC
a Nevada limited liability company

By: _____
    Alaria Saar, Managing Member


_____
ROBERT SCHALBE


_____
ERIC JOHNSTONE


_____
WILLIAM H. GAY, JR.


_____
RICCARDIO D. GAY


4     Appendix 2.4

to the Second Lien Principal Amount of this Note.

This Note may be executed in any number of counterparts, each of which shall constitute an original, but all of which when taken together shall constitute one and the same instrument.

THIS NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PAYEE AND THE MAKER AND EXCEPT AS OTHERWISE EXPRESSLY INDICATED ABOVE MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT AGREEMENTS OF THE PARTIES AND MAKER AGREES THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN PAYEE AND MAKER.

MAKERS:

CAL STATE INVESTMENT. L.P.
a Nevada limited partnership


By:_____
    Eugene E. Vollucci, General Partner



_____
DANIEL MANDARINO


_____
CARRIE MANDARINO


_____
ARMANDO LA FONTAINE

*Laura Doyle* (signature)
_____
LAURA DOYLE


_____
JENNIFER LA FONTAINE

ASE ENTERPRISES,
a Nevada limited liability company


RMST INVESTMENTS, LLC,
a _____ limited liability company

By:_____
    Alaria Saar, Managing Member


By:_____
    Richard Church, Managing Member


_____
ROBERT SCHALBE


_____          _____

Appendix 2.5

THIS NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PAYEE AND THE MAKER AND EXCEPT AS OTHERWISE EXPRESSLY INDICATED ABOVE MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT AGREEMENTS OF THE PARTIES AND MAKER AGREES THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN PAYEE AND MAKER.

MAKERS:

CAL STATE INVESTMENT, L.P.
a Nevada limited partnership

By:_____
    Eugene E. Vollucci, General Partner

_____
DANIEL MANDARINO

_____
CARRIE MANDARINO

_____
ARMANDO LA FONTAINE

_____
LAURA DOYLE

_____
JENNIFER LA FONTAINE

ASE ENTERPRISES,
a Nevada limited liability company

RMST INVESTMENTS, LLC,
a _Nevada_ limited liability company

By:_____
    Alaria Saar, Managing Member

By: _Rick Church_ (signature)
    Rick Church, Managing Member

_____
ROBERT SCHALBE

_____
RAFAL ZIELINSKI

_____
ERIC JOHNSTONE

_____
VALLY MESTRONI

_____
WILLIAM H. GAY, JR.

_Robert Church_ By: Rick Church, his attorney-in-fact
ROBERT CHURCH
BEALS FAMILY REVOCABLE TRUST

_____
RICCARDIO D. GAY

4    Appendix 2.6

THIS NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PAYEE AND THE MAKER AND EXCEPT AS OTHERWISE EXPRESSLY INDICATED ABOVE MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT AGREEMENTS OF THE PARTIES AND MAKER AGREES THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN PAYEE AND MAKER.

MAKERS:

CAL STATE INVESTMENT, L.P.
a Nevada limited partnership

By:_____
    Eugene E. Vollucci, General Partner

_____
DANIEL MANDARINO

_____
CARRIE MANDARINO

_____
ARMANDO LA FONTAINE

_____
LAURA DOYLE

_____
JENNIFER LA FONTAINE

ASE ENTERPRISES,
a Nevada limited liability company

RMST INVESTMENTS, LLC,
a _____ limited liability company

By:_____
    Alaria Saar, Managing Member

By:_____
    Richard Church, Managing Member

_____
ROBERT SCHALBE

_____
RAFAL ZIELINSKE

_____
ERIC JOHNSTONE

_____
VALLY MESTORINI

_____
WILLIAM H. GAY, JR.

_____
ROBERT CHURCH

_____
RICCARDIO D. GAY

4    Appendix 2.7

BEALS FAMILY REVOCABLE TRUST

By: _____
Brett Beals, Trustee

By: _____
Linda Beals, Trustee


LENDER:

SHERWOOD PINES,  LTD

By: _____
Herbert B. Richardson, General Partner

5    Appendix 2.8

Note Endorsement

Pay to the order of Lee Wallis, Inc. this 10th day of March, 2008.

Sherwood Pines, Ltd.

By: _____
John E. Gilmore,
General Partner

By: _____
Herbert B. Richardson,
General Partner

Pay to the order of Sherwood Lane Investments, L.L.C. this 19th day of May, 2014 without recourse.

Lee Wallis, Inc.

By: _____
James W. Hale,
President

Appendix 2.9

**Tex. Prop. Code § 51.003(a) Deficiency Judgment**

If the price at which real property is sold at a foreclosure under Section 51.002 is less than the unpaid balance of the indebtedness secured by the real property, resulting in a deficiency, any action brought to recover the deficiency must be brought within two years of the foreclosure sale and is governed by this section.

**Texas Revised Limited Partnership Act, Tex. Rev. Civ. Stat. art. 6132a-1 (RPLA) Article 8. Dissolution**

Tex. Rev. Civ. Stat. art. 6132a-1, Revised Limited Partnership Act

**Dissolution**

Sec. 8.01. A limited partnership is dissolved and its affairs shall be wound up only on the first of the following to occur:

(1) the occurrence of events specified in the partnership agreement to cause dissolution unless within 90 days after the event causing the dissolution, all remaining partners (or another group or percentage of partners as specified by the partnership agreement) agree in writing to continue the business of the limited partnership;

(2) written consent of all partners to dissolution;

(3) an event of withdrawal of a general partner, unless:

(A) there remains at least one general partner and the partnership agreement permits the business of the limited partnership to be carried on by the remaining general partner or general partners, and that general partner or those general partners do so; or

(B) within 90 days after the event of withdrawal, all remaining partners (or another group orpercentage of partners as specified by the

Appendix 3.1

partnership agreement) agree in writing to continue the business of the limited partnership and, to the extent that they desire or if there are no remaining general partners, agree to the appointment, effective as of the date of withdrawal, of one or more new general partners; or

(4) entry of a decree of judicial dissolution under Section 8.02 of this Act.


Sec. 8.04.

(a) Except as provided in the partnership agreement, on the dissolution of a limited partnership, the partnership's affairs shall be wound up as soon as reasonably practicable, and the winding up shall be accomplished by the general partners who have not wrongfully dissolved a limited partnership or, if there are none who have not wrongfully dissolved the partnership, by the limited partners or a person chosen by the limited partners. In addition, a court of competent jurisdiction, on cause shown, may wind up the limited partnership's affairs on application of any partner or the partner's legal representative or assignee and, in connection with the winding up, may appoint a person to carry out the liquidation and may make all other orders, directions, and inquiries that the circumstances require.

(b) On the dissolution of a limited partnership and until the filing of a certificate of cancellation as provided by Section 2.03 of this Act, unless a written partnership agreement provides otherwise, the persons winding up the limited partnership's affairs may, in the name of and for and on behalf of the limited partnership:

(1) prosecute and defend civil, criminal, or administrative suits;

(2) settle and close the limited partnership's business;

(3) dispose of and convey the limited partnership's property for cash, unless a written partnership agreement permits a transfer on noncash terms;

(4) discharge or make reasonable provision to pay the limited partnership's liabilities; and

(5) distribute to the partners any remaining assets of the limited partnership.

Appendix 3.2

(c) The acts described in Subsection (b) of this section do not create liability of limited partners that did not exist before the actions to wind up the affairs of the partnership were taken.


## Disposition of assets

Sec. 8.05. On the winding up of a limited partnership, its assets shall be paid or transferred as follows:

>   (1) to the extent otherwise permitted by law, to creditors, including partners who are creditors other than solely as a result of the application of Section 6.06 of this Act, in satisfaction of liabilities of the limited partnership, whether by payment or the making of reasonable provision for payment thereof;

>   (2) unless otherwise provided by the partnership agreement, to partners and former partners in satisfaction of the partnership's liability for distributions under Section 6.01 of this Act or payments under Section 6.04 of this Act; and

>   (3) unless otherwise provided by the partnership agreement, to partners first for the return of their capital and second with respect to their partnership interests, in the proportions provided by Section 5.04 of this Act.


## Forfeiture of right to transact business for failure to file periodic report

Sec. 13.06.

(a) A domestic or foreign limited partnership that fails to file a report required under Section 13.05 of this Act when due forfeits its right to transact business in this state.

(b) A forfeiture under this section takes effect without judicial ascertainment. The secretary of state shall enter on the record kept in the secretary's office relating to the limited partnership a notation that the right to transact business has been forfeited together with the date of forfeiture. Notice of the forfeiture shall be mailed to the limited partnership at:

>   (1) the registered office of the limited partnership;


Appendix 3.3

(2) the last known address of the limited partnership; or

(3) any other place of business of the limited partnership.

(c) Unless the right of the limited partnership to transact business is revived in accordance with Section 13.07 of this Act, the limited partnership may not maintain an action, suit, or proceeding in a court of this state, and a successor or assignee of the limited partnership may not maintain an action, suit, or proceeding in a court of this state on a right, claim, or demand arising out of the transaction of business by the limited partnership in this state. The forfeiture of the right to transact business in this state does not impair the validity of a contract or act of the limited partnership and does not prevent the limited partnership from defending an action, suit, or proceeding in a court of this state.

(d) This section does not affect the liability of a limited partner in the limited partnership.

Appendix 3.4

# APPENDIX 4 - Diagram of Transactions

**Morgan Guaranty Trust**
2001

Original Fixed Rate Note, (First Lien Note)

**Sherwood Pines, Ltd**

Sale of property and Wraparound Note (Second Lien)

**MANDARINO, et. al,**
**Appellants**
2006

Secured by Deed of Trust on Sherwood Pines Apartments

Secured by Deed of Trus on Sherwood Pines Apartments

Assignment of First Lien Note

**Wells Fargo**
2002

Endorsement of Wraparound Note (Second Lien)

*Sherwood Pines Apartments*

Assignment of First Lien Note

**Lee Wallis, Inc.**
2008

**Nueva Villa Apartment, LLC**
2008

Foreclosure 2010

Assignment of Wraparound Note (Second Lien)

**SHERWOOD LANE, LLC,**
**Appellee**
2014

Appendix 4

## APPENDIX 5 - Index of Persons and Companies

Beals, Bret — as Trustee of the Beals Family Revocable Trust, one of the makers of the Wraparound Note, and Appellant (CR 66, 73, 242).

Beals, Linda — as Trustee of the Beals Family Revocable Trust, one of the makers of the Wraparound Note, and Appellant (CR 66, 73, 244).

Cal State Investment Limited Partnership — One of the makers of the Wraparound Note, and Buyer of the Sherwood Pines Apartments (CR 66, 69, 155).

Church, Robert — One of the makers of the Wraparound Note, and Appellant (CR 66, 71, 239).

Compton, Jeffrey — CPA who performed calculations as to the balance due on the Wraparound Note for SHERWOOD (CR 76).

Doyle, Laura — One of the makers of the Wraparound Note, and Appellant (CR 66, 70, 236).

Gay, Riccardio D. — One of the makers of the Wraparound Note, and Appellant (CR 66, 71, 251).

Gay, William H., Jr. — One of the makers of the Wraparound Note, and Appellant (CR 66, 72, 249).

Gilmore, John E. — One of the general partners of Sherwood Pines, Ltd. (CR 48, 217-221).

Hale, James — President of Lee Wallis, Inc. (CR 53).

Appendix 5.1

| | |
|---|---|
| Johnston, Eric | One of the makers of the Wraparound Note, and Appellant. (CR 66, 69, CR Supp. 3). |
| Lee Wallis, Inc. | Received rights to a portion of the Wraparound Note from Sherwood Pines, Ltd. on March 10, 2008 (CR 53, 54, 74) and assigned the Wraparound Note to SHERWOOD on May 19, 2014 (CR 57, 74). |
| Mandarino, Daniel | One of the makers of the Wraparound Note, and Appellant (CR 66, 69, 232). |
| Mandarino, Carrie | One of the makers of the Wraparound Note, and Appellant (CR 66, 69, 234). |
| Mestroni, Vally | One of the makers of the Wraparound Note, and Appellant (CR 66, 69, 253). |
| Morgan Guaranty | Original Lender on the first lien note dated June 27, 2001, secured by Sherwood Pines Apartments, (wrapped note) (CR 173). |
| Richardson, Herbert B. | One of the general partners of Sherwood Pines, Ltd. (CR 62, 217-221). |
| Schalbe, Robert A. | One of the makers of the Wraparound Note, and Appellant (CR 66, 69, 246). |
| SHERWOOD LANE INVESTMENTS, LLC | Plaintiff in Trial Court (CR 5), and Appellee; received the Wraparound Note by Assignment from Lee Wallis, Inc. on May 19, 2014 (CR 57). |

Appendix 5.2

Sherwood Pines, Ltd.

Seller of Sherwood Pines Apartments (CR 155); Original Lender on the Wraparound Note dated October 16, 2006 (CR 66); Assignor of a portion of the Wraparound Note to Lee Wallis, Inc. on March 10, 2008 (CR 54, 74).

Villa Nueva Apartment, LLC

Lender who foreclosed on the first lien note secured by Sherwood Pines Apartments, and purchaser at the foreclosure sale on April 12, 2010 (CR 209).

Vollucci, Eugene E.

Realtor who represented Cal State Investments as Buyer of Sherwood Pines Apartments (CR 155, 160, 230); confirmed that the Wraparound Note was to have been a non-recourse note (CR 231), and one of the makers of the Wraparound Note (CR 66, 69).

Zielinski, Rafal

One of the makers of the Wraparound Note, and Appellant (CR 66, 69, 255).

## APPENDIX 6 - Time Line of Events

10/26/99    Certificate of Limited Partnership for Sherwood Pines, Ltd., with John Gilmore as Registered Agent, and John Gilmore and Herbert Richardson as general partners, (Exhibit G to Response to Motion for Summary Judgment, CR 217-219).

11/04/99    John Gilmore's withdrawal as General Partner of Sherwood Pines, Ltd. (Exhibit G to Response to Motion for Summary Judgment, CR 220); Dissolution of the limited Partnership.

06/27/01    Deed of Trust Sherwood Pines to Morgan Guaranty (Exhibit A to Response to Motion for Summary Judgment, CR 173).

10/04/05    Termination of Sherwood Pines, Ltd's right to do business in Texas (Exhibit G to Response to Motion for Summary Judgment, CR 223).

02/06/06    Cancellation of Sherwood Pines, Ltd's certificate of registration by Texas Secretary of State for failure to file periodic report (Exhibit G to Response to Motion for Summary Judgment, CR 224).

06/12/06    Commercial Contract for Sherwood Pines Apartments, at 4211 Sherwood Lane, Houston by Sherwood Pines Limited to Cal State Investment Limited Partnership for $4,560,000 (assumption of existing $2,875,000 note and Seller financing of $545,000) Per financing addendum, Seller financing shall be interest only for 5 years at 5.5% interest) and will not provide for personal liability (page 2, paragraph C(5). (Exhibit C to Response to Motion for Summary Judgment, CR 155).

10/16/06    Wraparound Promissory Note by Cal State Investment et. al. to Sherwood Pines, Ltd for $3,420,000 (Exhibit C-1 to Plaintiff's Motion for Summary Judgment, Wraparound Note, page 1, CR 66).

Appendix 6.1

11/02/06    Deed of Trust on Wraparound Note, Cal State Investment et. al. to Sherwood Pines, Ltd.  (Exhibit D to Response to Motion for Summary Judgment, CR 197).

04/20/07    Deadline for 2% non-assumption payment on Wraparound Note, (Exhibit C-1 to SHERWOOD's Motion for Summary Judgment, Wraparound Note, page 2, CR 67).

03/10/08    Endorsement of Wraparound Note by Sherwood Pines, Ltd to Lee Wallis, Inc. (Exhibit C-1 to SHERWOOD's Motion for Summary Judgment, Wraparound Note, page 10, CR 74).

08/28/09    Letter from Gene Vollucci To Whom it may concern:  "This letter is to confirm that the purchase for Sherwood Pines Apartments included a non-recourse loan.  All the parties, including the seller, were fully aware and in agreement that this loan was to be non-recourse, just like the underlying original note is and remains non-recourse."  (Exhibit K to Response to Motion for Summary Judgment, CR 231).

03/31/10    Assignment of Mortgage (securing First Lien Note) to Nueva Villa Apartment, LLC (Exhibit E to Response to Motion for Summary Judgment, CR 207).

04/06/10    Foreclosure of First Lien on Sherwood Pines Apartments by Nueva Villa Apartments   (CR 209).

04/12/10    Substitute Trustee's Deed to Nueva Villa Apartment, LLC for $1,775.000 (Exhibit F to Response to Motion for Summary Judgment, CR 209).

04/06/12    Two years after foreclosure.  (Expiration of 2 year statute of limitations, § 51.003 Tex. Prop. Code).

05/12/14    Certificate of formation Plaintiff/ Appellee SHERWOOD LANE INVESTMENTS, LLC (Exhibit H to Response to Motion for Summary Judgment, CR 225).


Appendix 6.2

05/19/14    Assignment of 2nd lien note to SHERWOOD LANE INVESTMENTS LLC (Exhibit B-1 to SHERWOOD's Motion for Summary Judgment, CR 57).

06/05/14    SHERWOOD LANE, LLC's Original Petition filed (CR 5).

12/19/14    Final Judgment entered (CR 396).

02/25/15    Notice of Appeal filed (CR 427).